Lane M. HAMER et al., Appellants,

v.

HOPE COTTAGE CHILDREN'S BUREAU, INC., Appellee.

No. 16480.

Court of Civil Appeals of Texas.

Dallas.

April 2, 1965.

Bill Thomas and F. T. Gauen, Jr., Dallas, for appellants.

R. Douglas Coffin, Dallas, for appellee.

DIXON, Chief Justice.

Appellants Janet Elaine Toles joined by her husband Bobby Jim Toles and her former husband Lane M. Hamer have filed a bill of review to set aside a judgment declaring three small children dependent and neglected and placing them for adoption. Mrs. Toles and her former husband, Hamer, are the parents of the children. Their suit also asks that Mrs. Toles' written consent for the children to be placed for adoption be set aside.

The judgment declaring the children dependent and neglected was rendered without notice to Mrs. Toles and Hamer on October 3, 1963 in the Juvenile Court of Dallas County. In this subsequent action to set aside said judgment a jury was impanelled but the court sustained a motion for instructed verdict filed by Hope Cottage Children's Bureau, Inc., defendant in the trial court and appellee here.

The substance of appellants' one point on appeal is that the evidence supported fact findings in accordance with appellants' pleaded theory of their cause of action.

After a careful consideration of the whole record we have concluded that the court was correct in sustaining appellee's motion and rendering judgment accordingly.

The parents of the children married in 1955 in the State of Iowa when the wife was fifteen years of age and the husband nineteen. Their three children had been born by the time she was nineteen years of age.

About six months after their marriage they moved to Tucson, Arizona; then to Phoenix, Arizona. In 1960 Mrs. Hamer filed suit in Phoenix for divorce. As they learned later the judgment for divorce in the Phoenix suit never became final though the parties apparently believed in good faith that it had.

After the supposed divorce Hamer left for California where for a time he was employed. But in the course of a union wage dispute he became unemployed and moved on to Seattle, Washington.

Meantime Mrs. Hamer and the children were in financial difficulties though for a short time Hamer paid child support ordered by the Arizona court. While he was still in California Mrs. Hamer and the children moved to California, but did not stay long. She returned to Phoenix and soon thereafter married a man named Keith. She and her new husband moved to Dallas, but he was unable to find work. She obtained a job working in a lounge. One day Keith committed suicide in her presence in front of the place where she was employed.

While in Dallas Mrs. Hamer discovered that her divorce from Hamer had not become final and that she was still married to Hamer. She then instituted divorce proceedings in Dallas. Hamer signed a waiver. The divorce judgment, dated August 22, 1962, of which Hamer had a copy, ordered him to pay $25.00 per week child support, the money to be paid through the Dallas County Juvenile Department. Hamer never made any of these payments.

Not long after her divorce Mrs. Hamer married Bobby Jim Toles, her present

husband. But her financial status did not improve. She went to the hospital and was operated on for cancer. Bobby Jim Toles also became ill and missed time from work. They were behind on their rent payments. Mrs. Toles says they were destitute. They were threatened with eviction and had their belongings packed ready to leave, but had no place to go. It was at this time that Mrs. Toles and her present husband signed written agreements providing for the placement of the children with appellee for adoption.

In the course of her struggles Mrs. Toles had several times placed her three children with other persons. In April 1961 soon after she came to Dallas with her supposed husband Keith and while she was working in a bowling alley, some people were taking care of the children for her. At the time of Keith's suicide she appealed to Hope Cottage Children's Bureau and the children were placed in a foster home on July 10, 1961. Later the children were returned to her so she could take them to her parents in Arizona. In December 1961 she placed them with a family named Koch where they stayed for ten months. A short time after Mrs. Hamer married Bobby Jim Toles she again contacted Hope Cottage because she had no way of taking care of the children herself, but Hope Cottage at first would not take the children. In February 1963 Hope Cottage took the oldest boy. In April Hope Cottage at Mrs. Toles' request took the other two boys. On April 4, 1963 she signed three written documents consenting for the boys to be placed for adoption.

The written documents above referred to expressly provide that Mrs. Toles consents for Hope Cottage Children's Bureau, Inc., a child placing agency licensed by the Texas State Department of Public Welfare, to place the children with adoptive parents of its selection, and she also consents to their adoption without the necessity of further consent by her. The documents further recite that the consent is given freely in the best interest of the children and that she had been advised and was aware that the consent was final and could not be revoked.

In August 1963 Mrs. Toles wrote a letter attempting to withdraw her consent for the adoption.

Meantime Lane Hamer, the father of the children, had experienced difficulties also. In September 1963 he had been stricken with polio while in the State of Washington. He was hospitalized from September through November 1963. His doctor told him that he would not be able to walk for three years. He was completely paralyzed from the waist down.

The children have been placed for adoption, but their adoption has not yet been consummated. By agreement of the parties the adoption hearing will be postponed pending determination of this suit.

OPINION

We must hold that the instructed verdict and the judgment rendered were proper.

Under the circumstances Mrs. Toles could not withdraw her consent for the adoption of the children. In Catholic Charities, etc. v. Harper, 161 Tex. 21, 337 S.W.2d 111, our Supreme Court has held that where a parent has surrendered possession of a child to an agency licensed by the State Department of Public Welfare to place children for adoption and has given written consent that such agency may place the child for adoption, that consent is subject to revocation only by proof of fraud, misrepresentation, overreaching and the like. Art. 46a(6), Vernon's Ann.Civ.St.

In this case there is no such proof. Mrs. Toles attempts to show that she was overreached. In oral argument her attorney said that she had been "coerced through circumstances." It is true of course that due to the force of adverse circumstances Mrs. Toles was unable to care for her children. But Hope Cottage did not cause or create the misfortunes which beset

her. She admits that on the occasion of several visits and negotiations with Hope Cottage representatives she discussed the adoption of her children, but she does not claim that false representations were made to her. She says simply that she did not read the three documents of consent before signing them. She herself says that nothing was done to prevent her reading them. Having had full opportunity to read the documents before signing them she will not be permitted to avoid the agreements on the ground that she was mistaken as to or ignorant of their contents. Gulf Oil Corp. v. Spence & Howe Const. Co., Tex.Civ.App., 356 S.W.2d 382, 387 (affirmed Tex., 365 S.W.2d 631); Indemnity Ins. Co. v. W. L. Macatee & Sons, 129 Tex. 166, 101 S.W.2d 553; Sunderman v. Roberts, Tex.Civ.App., 213 S.W.2d 705.

■ Neither Lane Hamer nor Mrs. Toles was notified of the hearing which resulted in the judgment of October 3, 1963 declaring the children to be dependent and neglected. In the case of Mrs. Toles notice was not necessary since by signing the three written consents she terminated her parental rights to the children. Catholic Charities, etc. v. Harper, supra.

■ But Lane Hamer, the father, had not signed documents consenting to the adoption of his children and, though efforts had been made to locate him, he had not been notified of the hearing at which they were declared dependent and neglected. Therefore he was entitled to a full hearing in a subsequent proceeding on the issue of whether sufficient facts existed to authorize the judgment of dependency. The law is that on such subsequent hearing if it appears that the children had in fact become dependent and neglected, then the proceedings are valid even as against the parents although they had no notice of the first hearing. DeWitt v. Brooks, 143 Tex. 122, 182 S.W.2d 687, 691.

■ The appeal now before us is from the subsequent proceeding which was afforded Hamer and Mrs. Toles. The evidence at the subsequent proceeding is undisputed that the three children were in fact dependent and neglected. Lane Hamer had received a copy of the divorce decree of August 22, 1962 ordering him to pay child support of $25.00 per week through the Dallas County Juvenile Department. As we have said, he made none of these payments. On October 3, 1963, the date of the dependency judgment, he was hospitalized with poliomyelitis and says in his pleading that he was unable to do anything for his children. Mr. and Mrs. Toles were in desperate straits, unable to pay their rent and obliged to move in with friends for food and shelter. In the face of these undisputed facts it was not error for the court to instruct the verdict in the subsequent hearing. Appellants' point on appeal is overruled.

The judgment is affirmed.