S. A. S. and C. W. F., By their next Friends B. F. and P. F., Appellants,

v.

CATHOLIC FAMILY SERVICES, INC., Appellee.

No. 9280.

Court of Civil Appeals of Texas, Amarillo.

March 11, 1981.

Cornett & Baumann, Bill Cornett and Bill Baumann, for appellants.

Storrs, Woodburn & Stokes, Douglas R. Woodburn, Amarillo, guardian ad litem.

Smith, Jarrell & Associates, Carson Smith and Nancy Garms, Amarillo, for appellee.

COUNTISS, Justice.

S.A.S. and C.W.F., unmarried minors and biological parents of a child, filed this bill of review seeking to set aside a decree terminating their parental rights. The trial court conducted the pretrial hearing required by *Baker v. Goldsmith*, 582 S.W.2d 404 (Tex.1979), concluded that the minors failed to establish a prima facie meritorious defense and dismissed the suit. This appeal was duly perfected from the judgment of dismissal. We affirm.

The evidence before the trial court consisted of affidavits of the two minors, a statement of facts from the termination proceeding and the trial court's decree of termination. We ascertain the following facts from those documents. When she became pregnant, S.A.S., 15 years of age, was living with her grandparents. The night

before the birth of the child, S.A.S. revealed her pregnancy to her grandmother, who immediately made arrangements for her to go to another city to have the child. Her grandmother was taking her to the airport the next morning when S.A.S. went into labor. A few hours later the child was born at a local hospital.

S.A.S. and the child's father, C.W.F., who was also a minor, had discussed their situation before the child's birth and apparently concluded that S.A.S.'s mother would either take the child or assist in raising it. That assumption was erroneous, however, and S.A.S.'s grandmother told her the child should be placed for adoption. By affidavit attached to her pleadings, S.A.S. stated her grandmother told her, "[C.W.F.] and I had to give the baby up, that we couldn't get married because we were too young and that the baby would be better off if we gave her up. She kept telling me about my grandpa and his hearing about the baby would 'kill' him."

A few hours after the birth, S.A.S. was visited by a representative of appellee Catholic Family Services, Inc. They discussed the child and S.A.S. agreed to the adoption but did not sign anything. The next day, May 8, 1980, the Catholic Family Services representative returned to the hospital and S.A.S. and C.W.F. signed an affidavit of relinquishment that included a waiver of citation.

On May 13, 1980, Catholic Family Services, Inc. filed a termination suit. S.A.S. and C.W.F. were not served with process. On May 16, 1980, after hearing evidence, the trial court rendered judgment terminating the parental rights of S.A.S. and C.W.F. to the child in question and appointing Catholic Family Services, Inc. as managing conservator. This bill of review seeking to set aside the decree of termination was filed on July 25, 1980.

S.A.S. and C.W.F. present four points of error in this court whereby they contend the trial court erred (1) in concluding they did not establish a prima facie meritorious defense; (2) in concluding they were negligent in failing to assert their meritorious defense in the termination suit; (3) in concluding that, as minors, they could waive service of citation in the termination suit and (4) in concluding they failed to prove extrinsic fraud by Catholic Family Services, Inc.

Initially, we will dispose of points two and four, which raise issues that are not before the court at this time. Under the bill of review procedure established by *Baker v. Goldsmith*, the complainant must file a petition that alleges factually and with particularity that the prior judgment (1) was rendered as the result of fraud, accident or wrongful act of the opposite party or official mistake (2) unmixed with the complainant's own negligence. The petition must also allege with particularity "sworn facts sufficient to constitute defense and, *as a pretrial matter,* present prima facie proof to support the contention." *Baker v. Goldsmith,* 582 S.W.2d at 408 (emphasis added).

■ At the pretrial hearing, the complainant establishes a prima facie meritorious defense when it is determined that the defense is not barred as a matter of law and the complainant would be entitled to judgment on retrial if no evidence to the contrary is offered. Whether the complainant has met the required standard is a question of law for the court. "If the court determines that a prima facie meritorious defense has not been made out, the proceeding terminates and the trial court shall dismiss the case." *Baker v. Goldsmith,* 582 S.W.2d at 409. If, however, the trial court concludes a prima facie meritorious defense has been shown, it will then conduct a trial. At the trial the issues of complainant's negligence, extrinsic fraud and other issues are resolved as outlined by *Baker v. Goldsmith.*

Within the foregoing framework, it is apparent the trial court's conclusions in the pretrial hearing concerning appellants' negligence and failure to prove extrinsic fraud are immaterial. Those issues are resolved at the trial on the merits. Since the trial court concluded S.A.S. and C.W.F. had not established a prima facie meritorious defense, they were not entitled to a trial on the merits and the trial court could not

reach the remaining issues. For the same reason, we do not reach them in this appeal. Our only inquiry is whether the trial court's conclusion concerning the meritorious defense is correct. If it is, we affirm; if not, we reverse. Points of error two and four are overruled.

The two remaining points of error are concerned with the prima facie meritorious defense issue. In that regard, *Baker v. Goldsmith*, 582 S.W.2d at 409, states:

> Prima facie proof may be comprised of documents, answers to interrogatories, admissions, and affidavits on file along with such other evidence that the trial court may receive in its discretion. The bill of review defendant may respond with like proof showing that the defense is barred as a matter of law, but factual questions arising out of factual disputes are resolved in favor of the complainant for the purposes of this pretrial, legal determination.

█ Under point of error one, the minors argue generally that their petition and affidavits establish a meritorious defense to the termination suit. Presumably they are contending that the instruments establish, prima facie, that the consent to adoption was procured by fraud, misrepresentation, overreaching and the like, which are grounds that have been recognized by Texas case law as sufficient to void a consent to adoption. *See Catholic Charities v. Harper*, 161 Tex. 21, 337 S.W.2d 111 (1960). After a careful review of the petition and affidavits, we cannot agree.

The petition is of no assistance as evidence. It is drafted in conclusionary form and does not "allege, with particularity, sworn facts" as required by *Baker v. Goldsmith*. Additionally, the petition, standing alone, is not recognized by *Baker v. Goldsmith* as evidence. The affidavits are more specific, but still do not make a prima facie showing of wrongful acts by Catholic Family Services.

C.W.F.'s affidavit only sets out various contacts with S.A.S. and her grandmother. S.A.S.'s affidavit, which does describe various contacts with Catholic Family Services, states that the Catholic Family Services' representative talked to her at the hospital three or four hours after the baby was born. S.A.S. says she agreed to the adoption, but did not sign the papers until the next day. The representative "explained the papers but used the same kinds of words that were in the papers." S.A.S. didn't know what "irrevocable" meant and didn't feel good because of the drugs. The Catholic Family Services representative told her the papers had to be signed on May 8 or not at all and the people who adopted the baby would tell the child about S.A.S. and C.W.F.

Resolving all doubts in favor of S.A.S. and C.W.F., assuming their affidavits are true and assuming no evidence to the contrary is offered, the facts they present do not establish a prima facie meritorious defense. *See Myers v. Patton*, 543 S.W.2d 22, 24–25 (Tex.Civ.App.—Texarkana 1976, no writ); *Hamer v. Hope Cottage Children's Bureau, Inc.*, 389 S.W.2d 123, 125–26 (Tex. Civ.App.—Dallas 1965, no writ). The affidavits merely recite the sequence of events; they do not evidence fraud, misrepresentation, overreaching or the like by Catholic Family Services. *Catholic Charities v. Harper*, 337 S.W.2d at 115.

Admittedly, the affidavits indicate that S.A.S.'s grandmother insisted that S.A.S. and C.W.F. agree to the adoption. There is no evidence, however, to suggest she did so in collusion with or at the request of Catholic Family Services or that it was aware of her activities. *See Myers v. Patton*, 543 S.W.2d at 25. Point of error one is overruled.

The minors' third point of error is that the waiver of citation in the affidavit of relinquishment executed by S.A.S. and C.W.F. was ineffective because a minor cannot waive service of citation. This proposition, if correct, would mean the trial court did not acquire in personam jurisdiction of S.A.S. and C.W.F. in the termination suit. *Bozeman v. Arlington Heights Sanitarium*, 134 S.W.2d 350, 351–52 (Tex.Civ. App.—Dallas 1939, writ ref'd).

The common law rule requires all minors to be personally served with process. *Matter of W.L.C.*, 562 S.W.2d 454, 455 (Tex. 1978). However, section 15.03 of the Family Code, as pertinent here, states:

§ 15.03. Affidavit of Relinquishment of Parental Rights.

(a) An affidavit for voluntary relinquishment of parental rights must be signed after the birth of the child by the parent, whether or not a minor, whose parental rights are to be relinquished, witnessed by two credible persons, and verified before any person authorized to take oaths.

Tex.Fam.Code Ann. § 15.03(a) (Vernon Supp. 1980–81).

Paragraph (c) of section 15.03 then states:

(c) The affidavit may contain:

\* \* \* \* \* \*

(2) a waiver of process in a suit to terminate the parent-child relationship brought under Section 15.02(1)(K) of this code, or in a suit to terminate joined with a petition for adoption under Section 16.03(b) of this code;

\* \* \* \* \* \*

Tex.Fam.Code Ann. § 15.03(c)(2) (Vernon Supp. 1980–1981).

It is apparent the legislature has abrogated the common law rule by the foregoing statute. By requiring the affidavit of relinquishment to be signed by the parent, whether or not a minor, and by permitting the affidavit to contain a waiver of process, the only reasonable conclusion is that the legislature intended to permit the minor to waive service under the specific circumstances set out in section 15.03(c)(2). We hold, therefore, that a minor may waive service of process when the waiver is contained in an affidavit for voluntary relinquishment of parental rights and used as permitted by section 15.03(c)(2) of the Texas Family Code.

S.A.S. and C.W.F. rely on the *Matter of W.L.C., supra,* and *In the Matter of D.W.M.,* 562 S.W.2d 851 (Tex.1978). Both of these cases, however, involve an interpretation of section 53.06(e) of the Family Code, which specifically excepts a child when authorizing waiver of service in certain proceedings in juvenile court. The cases are inapplicable to parental termination proceedings. Point of error three is overruled.

The judgment of the trial court is affirmed.

REYNOLDS, C. J., not participating.